In the Matter of the Construction of the Will of Lydia W. Thorne, Deceased.

In the Matter of the Construction of the Will of Grace D. Thorne, Deceased.

Surrogate's Court, Westchester County, January 5, 1951.

*Aaron Simmons, Corporation Counsel (John A. Bodmer* of counsel), for City of New Rochelle, petitioner.

*Harry B. Kurzrok* for Phil Brinn and others, interveners, respondents.

*Nathaniel L. Goldstein, Attorney-General (P. Hodges Combier* of counsel), respondent, in his statutory capacity under section 12 of Personal Property Law and section 113 of Real Property Law.

GRIFFITHS, S. The wills of Lydia W. Thorne, and Grace D. Thorne, sisters, residents of this county, contain identical provisions with respect to the subject matter of this proceeding. The will of Lydia W. Thorne is dated April 14, 1915, and she died October 21, 1916. The will of Grace D. Thorne is dated November 22, 1916, and she died September 28, 1919.

Each of said testatrices died seized of an undivided one-half interest in and to a parcel of real property containing approximately eighteen acres situate in the city of New Rochelle, New York, hereinafter referred to as the City. At the time of the execution of their wills as afore-mentioned, the said parcel of real property was and still is improved with a large one-family dwelling which the testatrices had occupied as their home. By the terms of the wills of both of the testatrices, said real property was devised to the City, subject to intervening life estates, to be used as a " Public Park " to be called " Davenports Park." Each devise was made subject to the following restrictions: " the said park *not* to be used as a *recreation park* however for *picnics* or *bathing,* but simply for *driving* and *walking;* it being my intention that said park is to beautify Davenports Neck and

is not in any way to be conducted or managed so as to create a nuisance and be objectionable to the property owners on Davenports Neck.'' (Emphasis added.)

Each will also provides for a fund in the amount of $50,000 from which the income only is directed to be used by the petitioner for the following purposes: '' creating a permanent endowment trust fund to be kept invested separate from all other funds * * * and the net income thereof to be applied to the laying out of the property devised in the eleventh paragraph of this my will in walks and drives and preserving the building now erected thereon for the uses and purposes of said ' Davenports Park ' and for the preservation and upkeep of said park.''

Contending that circumstances have so changed since the execution of the wills as to render impracticable and impossible a literal compliance with the terms of the wills, and particularly the limitation that the property be used for '' driving and walking '' only, the City seeks an order applying the cy pres doctrine and for permission to use part of the principal of the funds to defray the cost of demolishing the building on the premises, constructing a public comfort station, and of installing permanent picnic tables. The Attorney-General of the State of New York has appeared in the proceeding but does not oppose the application insofar as it seeks an order applying the cy pres doctrine. The Attorney-General does, however, object to the use of any part of the principal of the funds for the requested purposes. Certain property owners in the area who intervened in the proceeding have interposed answers opposing any relaxation in the application of the restrictions contained in the wills.

The authority of the City to accept real property upon conditions agreeable to it is conferred by statute. (Real Property Law, § 114, subd. 2; General City Law, § 20, subd. 3.)

Prior to the enactment of the so-called Tilden Act (Personal Property Law, § 12; Real Property Law, § 113), the English equitable rule known as the cy pres doctrine, which was applied to uphold gifts for charitable purposes when no beneficiary was named in the instrument, was not recognized by the New York courts. (*Holmes* v. *Mead,* 52 N. Y. 332; *Holland* v. *Alcock,* 108 N. Y. 312; *Tilden* v. *Green* 130 N. Y. 29.) Said statutes confer upon the Supreme Court or, where the charitable intent is expressed in a will, upon the Surrogate's Court, the authority to make an order, in a proper case, directing the manner in which property devoted to charitable purposes shall be administered '' without regard to and free from any specified restric-

tion, limitation or direction ''. To invoke such equitable power of the court, however, there must be a demonstration that '' circumstances have so changed *since the execution of an instrument* containing a gift * * * to * * * charitable * * * uses as to render impracticable or impossible a literal compliance with the terms of such instrument. (Emphasis added.)

It is to be noted that the wills of the testatrices were made in the years 1915 and 1916 respectively; that they died in the years 1916 and 1919; and that by reason of the intervening trust estates, petitioner did not come into possession of the property until 1929. Approximately thirty-four years have elapsed since the making of the later of the two wills. It has been established that at the time of the making of the wills most of the area comprising Davenport Neck was divided into large parcels occupied as country estates. Practically all of the then owners have since died or moved and some of the former estates have been developed for uses other than residential, several beach clubs and rest homes having been established. A large part of the area, however, has been subdivided into relatively small plots improved with one-family houses. While the zoning laws have been relaxed to permit the afore-mentioned nonresidential uses, the greater portion of the area is still zoned for one-family houses. The property in question is located on the south side of Davenport Avenue and extends back to Long Island Sound. The establishment of the beach clubs and general development of the area has resulted in greatly increased traffic along Davenport Avenue.

Both wills clearly provide that the property is given to the City for an undisputed charitable purpose, namely, a public park. The restrictions imposed upon the use of the property relate to its administration. While the court is under a duty to enforce restrictions validly imposed upon the use of property granted or devised for charitable purposes (*Beth Israel Hosp. Assn.* v. *Moses,* 275 N. Y. 209), the interpretation of the language employed in the instrument should be in accord with the general intent of the grantor or testator. Here the restriction is that the use of the property as a public park should be limited to '' driving and walking ''. Interpreting such restriction in the light of the circumstances existing at the time of the execution of the wills and considering that the devised property contains only eighteen acres, it is evident that in employing the word '' driving '' the testatrices referred to transportation by vehicles drawn by animals and not to power propelled ones. That it is

presently " impracticable " to use the property for " driving " in the sense employed in the wills cannot be questioned. The sole remaining stated use of the property is, therefore, " walking ". It is the contention of the City that such change of circumstances since the dates of the wills is sufficient to justify the court to disregard the plain mandate therein contained prohibiting the use of the property for picnicking or bathing and to permit its use for picnicking, fishing and general park purposes. The court cannot agree with such contention. The terms of the wills show that it was a condition of each devise and the intention of the respective testatrices that the property be kept and maintained in perpetuity as a public park, subject to the prescribed restrictions, and that it was " not to be used as a recreational park ". The expressed restrictions coupled with the statement of intention that the property is not to be managed " so as to create a nuisance and be objectionable to the property owners on Davenports Neck " show the deep concern of the testatrices for the interest and welfare of the adjacent owners. To permit the use of the property to be extended to include picnicking, fishing and general park purposes, as requested, would possibly attract large numbers of people. That such extended use of the property might create a situation which the testatrices may have envisaged as being objectionable to the other property owners on Davenport Neck, is conceivable. Such use of the property would be just as objectionable to the present owners of small homes as it would have been to the former owners of large estates. The nearness of such homes might very well render such use more objectionable. Moreover, the dedication of an area in a residential district for strictly park purposes, as distinguished from recreational purposes, is in accord with recognized municipal planning.

The conclusion of the court is not to be construed, however, to prohibit the demolition of the existing structure, the construction of a comfort station, the installation of benches, the construction of storm shelters, and the general improvement of the property in such a manner that the health, safety and convenience of the public using the park will be promoted. To prohibit the City from improving the park in at least these particulars might discourage the use of the park by other than persons living in the immediate vicinity and would impose such restrictions as would be in direct conflict with the expressed intent of the testatrices to devote the property to the public use.

The present aggregate value of the two $50,000 trust funds created in the will of each of the testatrices is stated to amount to approximately $75,000 from which the aggregate income for the year 1949 amounted to $2,403.63. The total cost of the improvements proposed by the City is estimated from $20,000 to $25,000. It does not appear that it is impracticable or impossible for the City to finance the projected improvements without resorting to the principal of the trust funds. The clear mandate of the wills that only the income of the funds is to be used should be observed, provided the purpose of the devices will not be thereby defeated. It is not disputed that the past income of the trust funds has been inadequate to defray the cost of ordinary maintenance, the resulting deficit having been made up out of tax moneys. The use of approximately one third of the present value of principal in the trust funds would necessarily reduce the future income therefrom proportionately and would increase the annual deficit for maintenance by a like amount. Under the conditions disclosed, the court would not be justified in authorizing the use of a portion of the principal of the trust funds for the purposes sought.

Settle decree on notice.